| | |
|---|---|
| TRACY MCCUE, | ) NO. CV 17-6259-KS |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## INTRODUCTION

Tracy McCue ("Plaintiff") filed a Complaint on August 24, 2017, seeking review of the denial of her application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.) On November 16, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 12, 13, 14.) On April 12, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 18.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for an immediate award of benefits or, alternatively, for further proceedings. (Joint Stip. at 17.) The Commissioner requests that the decision of the Administrative Law Judge ("ALJ") be affirmed or, in the alternative, be

remanded for further proceedings. (Joint Stip. at 17-18.) The Court has taken the matter under submission without oral argument and now affirms the ALJ's decision.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On December 9, 2013, Plaintiff, who was born on July 13, 1963, filed an application for DIB under Title II of the Social Security Act.[1] (Administrative Record ("AR") 28, 63.) Plaintiff alleged disability beginning August 26, 2008 due to lumbar and cervical spine impairments, arthritis, fibromyalgia, depression, and insomnia. (AR 28, 30.) The Commissioner denied Plaintiff's DIB application initially on October 22, 2014. (AR 28.) Plaintiff then requested a hearing. (AR 28.) Administrative Law Judge Sally C. Reason ("ALJ") held a hearing on April 6, 2016. (AR 43-62.) Plaintiff, represented by counsel, testified before the ALJ, as did medical expert ("ME") Arthur Brovender, M.D., and vocational expert ("VE") June C. Hagen. (AR 28.) On April 28, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 25-40.) On June 27, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff timely filed this Complaint.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements through June 31, 2010. (AR 30.) Then, applying the five step sequential disability evaluation process, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 26, 2008, the alleged onset date of disability. (AR 30.) At Step Two, the ALJ found that Plaintiff had two severe impairments: lumbar degenerative disc disease and obesity. (AR 30-31.) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or

---

[1] Plaintiff was 45 years old at onset and thus met the agency's definition of a "younger individual." *See* 20 C.F.R. §§ 404.1563(c).

2

combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 31.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. § 404.1567(b) except that she could only occasionally perform postural activities, *i.e.*, climbing, balancing, stooping, kneeling, crouching, and crawling." (AR 32.) At Step Four, the ALJ found that Plaintiff could perform her past relevant work as an office manager (DOT[2] 169.167-034) based on the testimony of the VE. (AR 36.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged disability onset date through December 31, 2010, the date last insured, and did not reach Step Five. (AR 37.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review "the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Garrison v.*

---

[2] "DOT" refers to the Dictionary of Occupational Titles.

*Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, meaning error that is "inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise one single issue: whether the ALJ improperly rejected Plaintiff's testimony regarding pain and functional limitations. (Joint Stip. at 2.) For the reasons discussed below, this Court finds no legal error in the ALJ's assessment of Plaintiff's subjective symptom testimony.

I. **Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the

pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

On March 28, 2016, Social Security Ruling ("SSR") 16–3p superseded SSR 96–7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16–3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness.'" *See* Guide to SSA Changes in Regulations and Rulings 2016–17, June 2017. The revision is applicable to Plaintiff's application here because the ALJ's decision was

issued on April 28, 2016. But the Ninth Circuit has acknowledged that SSR16–3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

## II. <u>Plaintiff's Symptom Testimony</u>

Here, Plaintiff testified that she primarily experienced pain in her lower back and down her leg. (AR 58.) Plaintiff said that this pain occurred "everyday" and that it lasted "almost all day." (*Id.*) She also testified about a problem with her neck that caused pain to travel down into her right arm and hand. (*Id.*) To deal with this constant pain, Plaintiff took Vicodin. (*Id.*) The Vicodin "did not help a lot," but made her pain "more bearable." (*Id.*)

Plaintiff's pain made doing chores difficult. (AR 59.) On a typical day, Plaintiff experienced "a lot of sciatic pain" and attempted to do chores when not lying down trying to find a comfortable position. (AR 59-60.) Plaintiff stated she could Swiffer floors, clean counters, dust surfaces, and wash dishes in ten to fifteen minute increments. (*Id.*) Plaintiff could not mop or vacuum because of the pressure it put on her back. (*Id.*) Her boyfriend did all the other cleaning. (*Id.*) In addition, Plaintiff's pain caused her difficulty sleeping. (AR 60.) These sleep problems further diminished Plaintiff's ability to function, leaving her "tired and foggy-headed" and making it difficult to concentrate or focus on anything. (*Id.*) As a result, Plaintiff testified to lying down or sleeping most of each day. (*Id.*)

//
//
//
//

### III. The ALJ's Analysis

The parties dispute whether the ALJ offered clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's testimony. In the written decision, the ALJ first found that Plaintiff had presented objective medical evidence of her "medically determinable impairments" that could be reasonably expected to produce lower back and leg pain (AR 33), thus satisfying Plaintiff's initial burden of proof. *Treichler*, 775 F.3d at 1102. But the ALJ further found that Plaintiff's "allegations of disabling symptoms during the period at issue [were] simply lacking support from the medical and non-medical evidence of record." (*Id.*) Specifically, the ALJ found Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms[] not entirely consistent with the medical evidence and the other evidence in the record." (*Id.*)

The ALJ provided three reasons for discounting Plaintiff's testimony: (1) Plaintiff had significant gaps in her treatment (AR 330;) (2) Plaintiff's doctors recommended, and Plaintiff opted for and managed her pain with, generally conservative treatment throughout the period of at issue (AR 33-34); and (3) Plaintiff's allegations of disabling pain lacked support from the objective evidence of record (AR 34-35). As discussed below, each constitutes a clear and convincing reason supported by substantial record evidence.

#### A. Gaps in Plaintiff's Treatment History

The ALJ noted significant gaps in Plaintiff's treatment during the period where Plaintiff testified to having pain in her lower back and left leg "almost all day" (AR 33-34) and "every day" (AR 58). Plaintiff allegedly began experiencing pain in 2003. (AR 242.) According to Plaintiff, this pain grew progressively worse. (AR 33, 56.) Yet, as the ALJ highlighted, the record showed "no evidence of any medical treatment by the claimant prior to 2007," and Plaintiff "subsequently acknowledged she had received no real treatment for

7

her back condition since 2003." (AR 33-34, 242.) In addition, from July 2007 to the onset date in August 2008, Plaintiff had not "received any medical attention for back pain in over a year." (AR 33.) Before the alleged onset date, Plaintiff testified to leaving work in 2005 because of her back pain. (AR 56.) The ALJ reasoned that this gap is "at odds with what one might reasonably expect if she truly left the workforce due to back pain in 2005 (as currently alleged)," and that "this tends to suggest that claimant's back pain was not particularly serious or limiting around the time of her departure from the workforce." (AR 33-34.)

The ALJ next examined the first gap in treatment after the August 2008 onset date. Plaintiff testified that her pain rendered her immobile for large portions of each day during the insured period (August 2008 to December 2010). (AR 58.) From August 2008 to April 2009, Plaintiff did not return to her doctor after having reinitiated her treatment for back pain. (AR 34, 217, 273.) The ALJ pointed out that Plaintiff testified to experiencing disabling pain during this period, yet Plaintiff failed to follow up on her initial treatment (at the onset date) for eight months. (AR 34.) The ALJ noted,

> Although [Plaintiff's] doctor at that time prescribed Vicodin and recommended a number of available modalities – including physical therapy, TENS, trial caudal injection, and aerobic exercise []— [Plaintiff] evidently chose not to avail herself of any these treatment options over the following months, another indication her condition was not as severe or limiting as currently alleged.

(*Id.*)

Following a caudal injection[3] in June 2009, Plaintiff did not seek additional treatment until January 2010. (AR 34, 307.) The ALJ found that Plaintiff's lack of further treatment

---

[3] A caudal injection is defined as "an injection into the lowest portion of the epidural space" to reduce lower back and leg pain. *See* Caudal Injection, Cleveland Clinic <https://my.clevelandclinic.org/health/treatments/16852-caudal-injection> ( last visited July 23, 2018).

8

undermined her claim of chronic and disabling pain. The ALJ applied similar reasoning to a further gap in Plaintiff's treatment, stating that a treatment gap from January 2010 to October 2010 "contrast[ed]" with Plaintiff's current claims. (AR 35; *and see* 307, 321.)

An ALJ may use unexplained or inadequately explained treatment gaps to discredit a plaintiff's subjective symptoms testimony. *See Tommasetti*, 533 F.3d at 1037 (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)); *Molina*, 674 F.3d at 1112; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, the ALJ pointed to evidence of four unexplained treatment gaps to support her finding. The first treatment gap occured before the alleged onset date, *i.e.*, before Plaintiff claimed to experience severe back pain "almost all day" (AR 33-34), and "every day" (AR 58). The ALJ started her treatment gap analysis in 2005 because that is when Plaintiff allegedly quit working because of her back pain. For the ALJ, this evidence undermined Plaintiff's testimony about her pre-onset symptoms. The ALJ did not use this treatment gap to discredit Plaintiff's testimony about her pain *during* the insured period. The ALJ's analysis nonetheless considered all of the relevant parts of the record for the pre-insured period. Thus, substantial evidence in the record supported the ALJ's finding that Plaintiff had sustained gaps in treatment, which undermined the credibility of her testimony that she had severe or limiting pain leading up to the onset date.

For the insured period, the record contains evidence of three additional treatment gaps. (AR 33-34.) The first gap in Plaintiff's treatment began immediately after Plaintiff's August 2008 disability onset date. Plaintiff alleged that the severity of her pain during that period rendered her immobile for large portions of each day. (AR 58.) Yet, as the ALJ noted, "[T]he record indicates [Plaintiff] did not even return to see her doctor for her back condition until April 2009." (AR 34.) The ALJ concluded that Plaintiff's decision not to pursue treatment at that time conflicts with her later testimony about the severity of her pain during the same time period.

//

9

Plaintiff's treatment record contained two additional gaps. While the medical record shows that Plaintiff received a caudal injunction in June 2009, the ALJ explained that "allegations of chronic disabling pain are undermined by the fact that subsequent treatment records show no evidence of any follow p treatment by [Plaintiff] for her back condition through the remainder of the year." (AR 34.) Indeed, the record indicated that Plaintiff's then-existing symptoms did not compel her to seek additional treatment from June 2009 to January 2010 or from February 2010 to October 2010. (AR 34-35, 307, 321.) These extended treatment gaps in the record constitute evidence upon which the ALJ could rely when discounting Plaintiff's subjective testimony about the severity of her symptoms. *See Tommasetti*, 533 F.3d at 1037; *Molina*, 674 F.3d at 1112; *Bruton*, 268 F.3d at 828.

Plaintiff alleged recurring, disabling pain throughout the insured period; however, Plaintiff's failure to consistently pursue treatment for this pain did not support her testimony. The record's documentation of Plaintiff's irregular treatment history supported the ALJ's finding that Plaintiff's symptom testimony was less than fully credible. (AR 34-35.) Thus, the ALJ offered a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom testimony. Accordingly, the Court finds no legal error in the ALJ's reliance on treatment gaps as a basis for finding Plaintiff's testimony less than fully credible.

### B. Plaintiff's Conservative Course of Treatment

The ALJ also discounted Plaintiff's testimony because of the conservative course of treatment that she received to alleviate her pain. The ALJ pointed out that Plaintiff managed her pain with ibuprofen, some Vicodin, and a caudal injection during the insured period. (AR 346.) Plaintiff also received anti-inflammatory injections once in January 2010. (AR 307.) The ALJ noted that her treating physician proposed various treatment options during her October 2008 visit for back pain. (AR 34, 244.) The doctor prescribed Vicodin and suggested "physical therapy, TENS trial, caudal injections, and aerobic exercise." (*Id.*). The

record shows that she pursued none of these options until eight months later when Plaintiff received a caudal injection. (AR 34, 274.) Indeed, in 2008, Plaintiff admitted to her doctor that she "rarely us[ed] the Vicodin prescribed." (*Id.*) While the treatment notes relating to the caudal injection in June 2009 showed that Plainitff experienced more pain at that time, the record shows only conservative treatment for the remainder of 2009. (AR 35.) For the ALJ, this fact undermined Plaintiff's allegations of chronic and disabling back pain daily and, instead, suggested a period of lingering pain resolved by the caudal injection. (*Id.*)

The record shows Plaintiff used ibuprofen—an over-the-counter medication—that is even more conservative than Vicodin. As late as 2011, "Plaintiff reportedly indicated she was managing her pain with ibuprofen." (AR 35, 346.) The ALJ reasoned that Plaintiff's use of ibuprofen to manage her pain "suggests her pain [in 2011] was still not especially serious, or at least not as serious as currently alleged." (*Id.*) The ALJ concluded that Plaintiff's conservative treatment throughout the relevant period contradicts Plaintiff's severe pain testimony.

The record indicated that, throughout the insured period, Plaintiff's doctors prescribed conservative alternatives only, such as: going to physical therapy to learn a home exercise program and applying a heat or ice pack after pain (first recommended in October 2008); stretching (first recommended in April 2009); and doing yoga, non-impact exercise, or touch therapy (all recommended in January 2010). (*See* AR 244, 275, 307, 346, 350.) Moreover, in March 2011, shortly after the date last insured, treating neurosurgeon Dr. Sanchez found no neurologic basis for surgery, a more invasive treatment. (AR 350.) The record indicated that Plaintiff tried exercise and physical therapy before ruling them out as options. (AR 360, 307, 487.)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

11

(citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Moreover, evidence that a plaintiff responded positively to conservative treatment can undermine her claim of disabling pain. *See Tommasetti*, 533 F.3d at 1040. Furthermore, evidence that a plaintiff failed to follow her course of treatment is another reason an ALJ may discount a plaintiff's testimony. *See Montalvo v. Astrue*, 237 Fed. App'x 259, 262 (9th Cir. 2007). A plaintiff may certainly provide a good reason for not following her directed course of treatment; however, her failure to assert a reason or the ALJ finding the asserted reason dubious can "cast doubt on the sincerity of claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (dictum).

Here, Plaintiff testified to experiencing pain so constant that it was disabling. (AR 58.) The ALJ, however, discounted this testimony because Plaintiff was able to manage her symptoms effectively with ibuprofen and occasionally Vicodin, a regime inconsistent with someone in unrelenting, disabling pain. (AR 35.) In 2008, Plaintiff chose to take a course of Vicodin for her back pain, at her doctor's recommendation. (AR 244.) Plaintiff later admitted to her doctor that she "rarely us[ed] the Vicodin," indicating that she could manage her pain on less than her prescribed course of treatment or felt pain that warranted taking Vicodin less often than otherwise alleged. (AR 274; *see also* AR 400.) Plaintiff's choice to rarely take Vicodin, a much stronger pain medication than ibuprofen, undermines her testimony about the severity of her pain. *See Fair*, 885 F.2d at 604; *Montalvo*, 237 Fed. App'x at 262.

Plaintiff testified that the Vicodin did not help a lot as it "just kind of dulls the pain a little bit" and makes it "a little more bearable but it is still there." (AR 58.) Yet, from August 2008 until June 2009, Plaintiff used Vicodin and did not seek more invasive treatment, such as the caudal injection. (AR 290.) Plaintiff's willingness to get the injection in June 2009 suggests that she did seek more intensive treatment when she experienced more intense pain. Similarly, Plaintiff's single course of anti-inflammatory injections received some seven

months later in January 2010 showed a more invasive pain treatment on an episodic basis rather than as a sustained course of treatment. Thus, Plaintiff's conservative treatment from August 2008 to January 2010 conflicted with her testimony about severe pain "almost all day" (AR 33-34) and "every day" (AR 35).

Plaintiff's conservative treatment and her doctor's modest recommendations after January 2010 also indicate that Plaintiff was not experiencing pain as severe as she alleged during the remainder of the insured period (through December 2010). The fact that Plaintiff "reportedly indicated she was managing her pain with ibuprofen" in early 2011, (AR 346-47, 360), reinforces the ALJ's finding. In *Tommasetti*, the court reasoned that plaintiff's favorable response to conservative treatment undermined plaintiff's later reports of disabling pain. *See Tommasetti*, 533 F.3d at 1040. In that case, the court went on to affirm the ALJ's decision to discount plaintiff's credibility. *Id.* Here, the record evidence supported a similar conclusion by the ALJ and supports a similar ruling by this Court.

From 2008 to 2011, Plaintiff largely managed her pain with ibuprofen, *i.e.*, conservative treatment. Also, Plaintiff's treating physicians continued to recommend only conservative treatments throughout that period, and her neurosurgeon in March 2011 found no neurological basis for surgery to address her symptoms. (*See* AR 244, 275, 307, 346, 350.) This evidence fully supports the ALJ's conclusion that Plaintiff's pain was not as severe as she alleged in her testimony. Further, her doctors' continually-modest recommendations, such as yoga and massages in 2010 (AR 308), suggest that the doctors expected a favorable response to conservative treatment. Accordingly, the record supports the ALJ's finding that Plaintiff's testimony was less than credible because of Plaintiff's history of conservative treatment.

//
//
//

### C. Plaintiff's Objective Medical Evidence

Not surprisingly, given the record evidence of generally conservative treatment as discussed above, the ALJ found that the "[Plaintiff's] allegations of disabling symptoms during the period at issue are simply lacking support" from the medical evidence of record. (AR 33.) Indeed, the ALJ supported her conclusions that "[t]he existing medical records from 2008 through 2010 fail to demonstrate evidence the claimant had ongoing, disabling back pain at that time (as currently alleged)," with a close analysis of the medical record. (AR 33.)

In assessing a claimant's credibility, the ALJ is permitted to consider "minimal objective evidence," a shortage or lack of evidence, among other factors. *Burch*, 400 F.3d at 681. The ALJ may not categorically discredit subjective pain testimony merely because it is unsupported by objective medical findings. S*ee Fair*, 885 F.2d at 602. However, the ALJ may consider "the conflict between [the plaintiff's] testimony of subjective complaints and the objective medical record," and find that the latter does not support the former. *Morgan v. Comm'r of SSA*, 169 F.3d 595, 600 (9th Cir. 1999). While the Court acknowledges that an ALJ may not reject a claimant's testimony solely because of minimal objective evidence, this factor, coupled with other clear and convincing reasons, sufficiently served to discredit Plaintiff's testimony. *Burch*, 400 F.3d at 680-81.

Here, the ALJ noted that medical records from Plaintiff's visits in August and October 2008 described Plaintiff's back condition as "mild." (AR 34, 217, 243.) Examining an x-ray of Plaintiff's lumbar spine in August 2008, Doctor Peter Filsinger found "'mild' degenerative osteophytes and disc space narrowing without finding evidence of compression fracture, spondylolisthesis, or other abnormalities." (AR 34, 217.) In October 2008, Doctor Ng Vuong, a specialist in Physical Medicine, found Plaintiff to have "some tenderness to palpation as well as some mild diminution in back range of motion ('fingertips to knees')";

yet, her findings were otherwise normal. (AR 34, 243.) The ALJ cited to these mild and normal examination results in 2008 as evidence that Plaintiff's symptom testimony about the severity and disabling nature of her condition was unsupported by objective medical findings for this period. (AR 34.)

Next, the ALJ pointed to the normal results of the examination conducted by the treating doctor in April 2009, the next time Plaintiff sought treatment. (*See* AR 35, 274.) The ALJ acknowledged that Plaintiff received a caudal injection to alleviate her back pain in June 2009, showing Plaintiff was experiencing pain at that time. (AR 34, 307.) The ALJ then described the results of the examination conducted by her doctor in January 2010 and concluded Plaintiff's objective clinical presentation was essentially normal. (*Id.*) The findings included "only mild tenderness and otherwise normal toe walking, a negative Faber test, normal deep tendon reflexes, full (5/5) motor strength, and intact sensation throughout the lower extremities bilaterally." (AR 34, 307.) The ALJ contrasted these findings with Plaintiff's claim of "daily or constant debilitating pain," concluding that the findings undermine[d] her testimony. (AR 34.)

The ALJ then considered the medical records from October and November 2010, concluding that they did not indicate severe pain before the end of the insured period. (AR 34-35.) The ALJ summarized the results of Plaintiff's October 2010 visit, noting that Plaintiff's physical examination was noted to be within normal limits. (AR 35, 339.) Also, while an updated MRI of the Plaintiff's lumbar spine in October 2010 showed "evidence of disc protrusion at L5-S1 and moderate lumbar canal narrowing at L4-L5, the protrusion reportedly only had a 'mild effect' on the left SI nerve root and the lumbar neural foramina remained 'adequately patent' bilaterally." (AR 35, 350, 361.) Next, the ALJ stated that the medical records from the months immediately succeeding the end of the insured period also failed to support Plaintiff's symptom testimony. (AR 35.) Doctor Sánchez indicated Plaintiff had a largely normal objective clinical presentation with no neurologic basis for surgery as of

March 2011. (AR 35, 349-50.) This evidence provided substantial support for the ALJ's conclusion that the objective medical evidence through the end of the insured period did not support Plaintiff's claims of disabling symptoms.

The ALJ acknowledged that Plaintiff underwent two back surgeries *after* the insured period, but found that Plaintiff's surgical treatment said "little, if anything, about the severity of her symptoms *during* the period at issue." (AR 35 (emphasis added).) The first surgery, "a lumbar fusion at L4-L5 and L5-S1," occurred in September of 2014, nearly four years after Plaintiff's date last insured. (AR 35, 854.) The second surgery, "a TLIF revision with retro pulsed L5-SI spacer," happened in April 2015. (AR 35, 856.) The ALJ did not rely on this portion of the medical record in making her determination about the severity of Plaintiff's symptoms from 2008 to 2010 because of the four year gap between the insured period and these surgeries. (AR 35.) The ALJ reasoned that, "the more recent treatment records tend to suggest there was a worsening of the claimant's condition in or around March 2014, *i.e.*, three or more years after the date last insured." (AR 35, 854.) The ALJ recognized that other treatment records from 2014 indicated that Plaintiff developed more serious symptoms as of August 2013. (AR 35, 757.) Because these serious findings are reflected in a part of the record well outside of the insured period, the ALJ gave them no weight. (AR 35.) The ALJ concluded, that in the period at issue, Plaintiff exhibited few clinical deficits. (*Id.*)

Here, the ALJ properly considered the minimal objective evidence supporting Plaintiff's severe symptom testimony as a factor in her decision to discount Plaintiff's credibility. The record also lacked objective evidence supporting Plaintiff's pain testimony relating to the period of August 2008 to October 2010 and contained minimal objective evidence relating to the period of October 2010 through December 2010, the final months insured. An updated MRI of claimant's lumbar spine showed evidence of disc protrusion with a mild effect on the left SI nerve root. (AR 350, 362.) Plaintiff also had moderate lumbar canal narrowing at L4-L5. (AR 350, 362.) While this objective evidence does show a

change in Plaintiff's condition, the doctors reviewing the MRI in October 2010 and March 2011 found only a mild effect on the nerve root. (AR 350, 362.) Further, minimal objective evidence supported Plaintiff's pain testimony regarding the end of the insured period. *See Burch*, 400 F.3d at 680-81. The record thus supported the ALJ's conclusion that Plaintiff's symptoms testimony was less than fully credible.

While the medical record showed that Plaintiff's condition worsened in August 2013, well *after* the date last insured, these later records do not support Plaintiff's testimony about the severity of her pain up until December 2010. (*See, e.g.*, AR 710-715, 757.) Therefore, the Court finds no legal error in the ALJ's conclusion that the objective record did not support Plaintiff's symptom testimony. While minimal objective evidence is not sufficient in itself to discredit Plaintiff's testimony, the ALJ provided other valid reasons to discount Plaintiff's testimony. *Burch*, 400 F.3d at 681.

**D. ALJ's Reliance On The Medical Expert's Testimony**

Plaintiff also argues that the ALJ erred in relying on the ME's testimony when discounting Plaintiff's subjective complaints because the ALJ did not let Plaintiff's counsel finish her line of questioning of the ME at the hearing. (Joint Stip. at 8-9.) Because of the ALJ's intervention, Plaintiff contends that the ME did not adequately address whether Plaintiff's alleged pain prior to the date last insured reflected a progressive condition connected to Plaintiff's post-insured treatment. (*Id.*) Notwithstanding, the record indicates that the ME did address this issue during questioning by both the ALJ and Plaintiff's counsel. For instance, during the ME's questioning by the ALJ, the following conversation occurred:

> [ME]: Your Honor, I do want to mention that she did, in 2014 did have surgery
> [ALJ]: Right.

| | |
|---|---|
| 1 | [ME]: -- several, and then in '15 surgery. Based on this, Your Honor, she did |
| 2 | not meet or equal any listing during that period that you're asking me about. . . . |
| 3 | EXAMINATION BY THE ATTORNEY: |
| 4 | [ATTY]: Based on the medical records and the objective imaging, is there-- |
| 5 | would it be reasonable that Ms. McCue would be experiencing pain -- |
| 6 | [ME]: If she says she has pain, I believe she has pain. |
| 7 | [ATTY]: And would -- is it reasonable that she would be experiencing pain |
| 8 | prior to that date? |
| 9 | [ME]: It's reasonable, yes. |
| 10 | [ATTY]: And do different people experience pain in different ways? |
| 11 | [ME]. Is that a question? |
| 12 | ALJ: Well, that's a speculative question. Let's deal with the records we have |
| 13 | and talk about what those specific exhibits reflect, please, on your questions to |
| 14 | the doctor. . . . |
| 15 | [ATTY].With respect to the progress of treatment, is her -- the progress of her |
| 16 | treatment consistent with somebody who is experiencing severe back pain? |
| 17 | ALJ: Well, again you're asking the same question and you're going along the |
| 18 | same line. But let's be specific about the exhibits and deal with the prior at |
| 19 | issue, 2008 to 2010. |
| 20 | ATTY: Okay. Well, I'm just trying to establish that she started with a condition, |
| 21 | it was -- they were researching and trying to figure out - - - |
| 22 | ALJ: Ma'am, I understand what you're trying to get to. But the problem is you |
| 23 | need to be specific and deal with these records. |

(AR 50-52.) After the latter exchange, the attorney asked if Plaintiff's progress of treatment was consistent with somebody who is experiencing pain from 2008 onward, and the ALJ stated, "I think he's already answered that." (AR 53.) Plaintiff's counsel asked if the ME had anything else to add, to which the ME responded, "No." (*Id.*)

In the adverse decision, the ALJ gave "great weight" to the ME's opinion. (AR 35.) The ALJ found that the ME's testimony was consistent with the ALJ's own observations that the record during the insured period reflected "largely normal clinical findings" and "essentially conservative treatment." (AR 36.) The ALJ also noted, "[A]lthough not a treating or examining physician, [the ME] had an opportunity to review all of the currently available medical evidence and therefore, at the time he provided his opinion, he was quite familiar with the [Plaintiff's] documented medical conditions(s)." (AR 35.) Therefore, the ALJ provided legally sufficient reasons, based substantially on the record, for the weight he attributed to the ME's testimony.

Consequently, even assuming the ALJ erred in excluding what Plaintiff's counsel sought to bring to light about the possible progressively worsening nature of Plaintiff's condition after the insured period, any error would be harmless. *See Carmickle*, 533 F.3d at 1162 (holding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons that were valid). The ALJ articulated three legally sufficient reasons supported by substantial record evidence for discrediting the severity of Plaintiff's symptoms testimony. (*See* AR 33-35.) Thus, any error in the questioning of the ME was harmless and does not warrant disturbing the ALJ's adverse decision.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of the Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and Counsel for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 23, 2018

*/s/ Karen L. Stevenson*
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE